THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| CHRISTOPHER WILLIAMS,<br><br>      Petitioner,<br><br>v.<br><br>STATE OF UTAH,[1]<br><br>      Respondent. | **MEMORANDUM DECISION & ORDER DISMISSING HABEAS PETITION**<br><br>Case No. 4:18-CV-93-DN<br><br>District Judge David Nuffer |

In this federal habeas-corpus case, *pro se* inmate Christopher Williams,[2] ("Petitioner") attacks his state conviction. 28 U.S.C.S. § 2254 (2021) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

Having carefully considered the parties' filings, including the petition and exhibits, (ECF No. 1); the State's answer and exhibits, (ECF No. 8); Petitioner's reply memorandum opposing the answer, (ECF No. 17), and the State's reply memorandum supporting the answer, (ECF No. 25), the Court denies each of Petitioner's claims on the following bases: Ground One is rejected as vague and conclusory. Grounds Two, Five and Six are denied for having been procedurally defaulted. Grounds Three, Four, Seven and Eight are denied on the merits because Petitioner has

---

[1] Petitioner must clearly name his custodian (warden or ultimate supervisor of imprisonment facility) as the respondent. R. 2, Rs. Governing § 2254 Cases in the U.S. Dist. Cts. The Court therefore assumes Petitioner means Respondent is Central Utah Correctional Facility Warden Robert Powell.

[2] Because Petitioner is *pro se*, his pleadings must be construed liberally. *Garrett v. Selby, Connor, Maddux, & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). However, this requirement does not obligate the Court to form arguments for him or excuse compliance with procedural rules. *Id*.

not surmounted the federal habeas standard of review. The Petition is therefore denied in its

entirety.

## Contents

I. BACKGROUND ........................................................................................................... 2

II. PETITIONER'S ASSERTED GROUNDS FOR FEDERAL HABEAS RELIEF ................... 6

III. ANALYSIS ............................................................................................................... 7

   A. Ground One is dismissed as vague and conclusory ........................................... 7

   B. Procedural Default ........................................................................................... 9

      1. Unexhausted issues ..................................................................................... 10

      2. Issues dismissed on independent and adequate state grounds ...................... 12

      3. Exception to procedural bar ......................................................................... 12

   4. Summary ......................................................................................................... 25

   C. Merits Analysis .................................................................................................. 25

      1. Standard of Review ...................................................................................... 25

      2. Petitioner fails to show that the exclusion of testimony related to alleged child
      pornography on the victim's phone violated his Constitutional rights ................................. 30

      3. Petitioner fails to show that the trial court violated his Constitutional rights  when it
      denied his motion for a mistrial after a witness testified  that Petitioner had been involved in
      prior drug sales .................................................................................................... 34

      4. Petitioner fails to show that the sentencing court violated his Constitutional rights by
      failing to conduct an explicit interests of justice analysis .................................................. 37

      5. Petitioner fails to show that his counsel failed to provide  Constitutionally adequate
      assistance ........................................................................................................... 38

IV. CONCLUSION .......................................................................................................... 41

## I. BACKGROUND

Petitioner was convicted of aggravated kidnapping and aggravated assault for his

involvement in an attempt to collect on a drug debt in January 2011. The Utah Court of Appeals

provided the following summary:

> In January 2011, Williams arranged to meet the victim at a
> grocery store in an attempt to settle a drug debt the victim owed to

Williams's girlfriend. Williams eventually drove the victim to the home of his co-defendant, David Nichols. A short time after their arrival, Nichols beat the victim with a walking stick, rendering him unconscious. That beating was allegedly a reaction to an insult made about Nichols's sister and after Nichols had discovered something that upset him on the victim's cell phone. When the victim awoke, Nichols and Williams were tying him to a chair and threatening to kill him. They took the victim's wallet and cell phone, as well as a food stamp card worth several hundred dollars. They also took the victim's coat and shoes.

Williams then left to get the victim's car and bring it back to Nichols's house. When he returned with the car, Williams participated in going through the victim's property that was in his car. Williams also brought the title to the car into the house. Nichols wrote a bill of sale transferring the title of the car to Williams, which the victim was forced to sign.

Williams and another associate, Max Dozah, then put the victim in Williams's girlfriend's car and told him not to move. They drove the victim up Parley's Canyon and then up Emigration Canyon, threatening him as they drove. There was a metal pipe in the car, and Dozah threatened to use the pipe both to break the victim's legs and to kill him. Williams told the victim that "this is how they [took] care of their debts, their problems. " They stopped the car at the snow closure gate in Emigration Canyon and made the coatless victim get out. Dozah also exited the car and asked Williams to hand him the metal pipe. Williams held the pipe out to Dozah, but Dozah ultimately did not take it. After screaming threats at the victim, Dozah reentered the car, and Dozah and Williams drove away, leaving the victim in the canyon. The victim later flagged down someone who called for help. The police responded, and the victim was eventually transported to a hospital via ambulance.

Williams was charged with aggravated kidnapping, aggravated robbery, and aggravated assault. Prior to trial, the State moved to exclude Williams's claim that child pornography was what Nichols had seen on the victim's phone. The State argued that the evidence was irrelevant and extremely prejudicial. But Williams argued that the evidence was very relevant because it showed that Nichols had acted alone and spontaneously when beating the victim with the walking stick. The trial court agreed with the State and excluded the evidence.

At trial, during the State's questioning of the victim, the victim testified that Williams had "dropped off" drugs to him on one previous occasion and had been present during other drug transactions. Williams moved for a mistrial, arguing that this was prior bad acts evidence and that since it had not been disclosed

3

> prior to trial, it could not be used. The trial court denied Williams's
> motion, reasoning that the State had not been trying to elicit prior
> bad acts testimony and that the testimony was not unfairly
> prejudicial because "this whole case is about drugs and people who
> use drugs and collecting of debts and forgeries and etcetera, to
> settle drug debts. "
>
> At the end of the State's case, Williams moved for a
> directed verdict, arguing that the elements of the charged offenses
> had not been proven. The trial court denied the motion, stating that
> there had been sufficient evidence from which the jury could find
> that Williams committed the charged crimes.
>
> Williams was acquitted of aggravated assault but was
> convicted of aggravated kidnapping and aggravated robbery. He
> was thereafter sentenced to consecutive sentences of fifteen years
> to life and five years to life, respectively.

*State v. Williams*, 2014 UT App 198, ¶¶ 2-8, *cert. denied*, *State v. Williams*, 343 P.3d 708 (Utah 2015)(table).

On direct appeal, Petitioner, represented by counsel, unsuccessfully asserted (a) the evidence presented at trial was insufficient to support the aggravated robbery conviction; (b) the trial court should have allowed testimony that the assault was a spontaneous response to the discovery of child pornography the victim's cell phone; and (c) the trial court should have granted Petitioner's motion for a mistrial due to unanticipated testimony referencing prior involvement in criminal activity. *Id.* ¶ 1. Petitioner's counsel filed a petition for certiorari to the Utah Supreme Court challenging issues (b) and (c), raised in the Court of Appeals. (ECF No. 8-1.) Issue (a) from Petitioner's direct appeal was omitted from his petition to the Utah Supreme Ccourt. *Id.* Petitioner's petition for certiorari was denied. *State v. Williams*, 343 P.3d 708 (Utah 2015)(table).

Petitioner then brought a *pro se* state petition (PCP) for post-conviction relief, asserting (a) the trial court, the prosecution and his counsel had erred by neglecting to provide jury instructions on lesser included offenses for aggravated kidnapping and aggravated robbery; (b)

4

the jury instructions improperly defined the elements of aggravated kidnapping; (c) Petitioner was denied due process at sentencing by the court's failure to conduct an interest of justice proceeding as required under *LeBeau v. State*, 337 P.3d 254 (Utah 2014) and his counsel's failure to object to consecutive sentences; and (d) ineffective assistance of trial and appellate counsel for various additional reasons.[3] (ECF No. 8-2.)

The PCP court denied Petitioner's claims on a motion for summary judgment. The PCP court ruled that Petitioner's claims that the trial court and prosecutor committed plain error for failure to include a lesser-included offense instruction and improper definition of the elements of aggravated kidnapping were procedurally barred by the Utah Post-Conviction Remedies Act because they had not been raised at trial or on appeal. (ECF No. 8-2, at 11.) The PCP court then rejected Petitioner's claims of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). The PCP court ruled that *LeBeau* was inapposite because it wasn't decided until nearly two years after Petitioner's sentencing. (ECF No. 8-2, at 15-16.) Petitioner appealed

---

[3] Williams's ineffective assistance counsel claims are summarized as follows: (a) appellate counsel failed to request a remand under Utah Rule of Appellate Procedure 23B to create a record of ineffective assistance of trial counsel; (b) appellate counsel failed to preserve challenges related to defective jury instructions; (c) appellate counsel failed to preserve appeals related to allegedly incomplete discovery; (d) appellate counsel failed to challenge the credibility of the victim's trial testimony; (e) appellate counsel failed to argue that Williams had been denied necessary resources to call expert witnesses necessary to his defense; (f) appellate counsel failed to argue prosecutorial misconduct; (g) appellate counsel failed to preserve challenge to authenticity of photographs of victim's injuries and lack of DNA evidence on rope allegedly used to tie victim; (h) trial and appellate counsel failed to use available law and evidence for Williams's defense; (i) trial and appellate counsel failed to conduct reasonable factual and legal investigations on Williams's behalf; (j) appellate counsel failed to argue trial counsels' conflict of interest based on their former employer; (k) trial and appellate counsel failed to provide adequate representation as required under both the federal and state constitutions and Utah statutes; (l) appellate counsel failed to argue that trial counsel had been ineffective for neglecting to pursue a lesser included defense strategy for aggravated robbery; (m) appellate counsel failed to argue that trial counsel had been ineffective at sentencing for failure to assert the need for an interests of justice analysis and object to consecutive sentences; (n) appellate counsel failed to request extended briefing necessary to adequately brief the appeal; (o) appellate counsel failed to preserve challenge to trial counsel's failure to assert the need for co-defendant jury instructions pursuant to §77-17-5; (p) appellate counsel's failure to preserve challenge to trial counsel's decision not to waive jury trial as Williams had requested; and (q) appellate counsel's failure to preserve challenge to the trial judge's refusal to allow reduced charges. (ECF No. 25-1, at 11, 15-21.)

the PCP court's grant of summary judgment. The Utah Court of Appeals summarily affirmed. (ECF No. 8-4 at 5.)

Petitioner submitted a *pro se* petition for certiorari to the Utah Supreme Court. Petitioner's petition for certiorari introduced several novel issues but omitted some of the claims of ineffective assistance of counsel presented his original PCP.[4] Petitioner's petition for certiorari attempted to preserve all his previous arguments by reference. *See*, PCP Petition for Certiorari, ECF No. 25-1, at 13-14. ("I adopt all I have said in prior proceedings pursuant to U.R.C.P. Rule 10(c) " and "I adopt all prior facts and arguments and answers in prior pleadings as well as my defense in the 10/27/17 hearing to this proceeding. ") Petitioner's petition to the Utah Supreme Court was denied. *Williams v. State,* 429 P.3d 465 (Utah 2018).

## II. PETITIONER'S ASSERTED GROUNDS FOR FEDERAL HABEAS RELIEF

Petitioner now presents eight grounds for relief in his federal petition for habeas relief (the Petition). Ground One is little more than a conclusory recitation of the statutory language of 28 U.S.C. §2254(d)(1)(2) combined with a general reference to Petitioner's other claims. (ECF No. 1, at 8.)

Petitioner next asserts the grounds he raised on direct appeal as Grounds Two, Three and Four: the evidence presented at trial was insufficient to support the aggravated robbery conviction, (*id*. at 11-12, 16-23); the trial court should have allowed testimony that the assault was a spontaneous response to the discovery of child pornography the victim's cell phone, (*id*. at

---

[4] Williams's petition for certiorari lacked direct reference to the following issues as described in footnote 3: (c) appellate counsel failed to preserve appeals related to allegedly incomplete discovery; (e) appellate counsel failed to argue that Williams had been denied necessary resources to call expert witnesses necessary to his defense; (j) appellate counsel failed to argue trial counsel's conflict of interest as former employment; (l) appellate counsel failed to challenge trial counsel's failure to pursue a lesser included defense strategy for aggravated robbery; (n) appellate counsel failed to request extended briefing necessary to adequately brief the appeal; (p) appellate counsel's failure to preserve challenge to trial counsel's decision not to waive jury trial as Williams had requested; and (q) appellate counsel's failure to preserve challenge to the trial judge's refusal to allow reduced charges.

12-14, 24-27); and, the trial court should have granted Petitioner's motion for a mistrial due to unanticipated testimony referencing prior bad acts, (*id*. at 14-15, 27-29). Ground Two had been presented to the court of appeals but was not included in the petition for certiorari to the state supreme court. *See* ECF No. 8-1.

Petitioner then presents each ground raised in his PCP as grounds Five, Six, Seven and Eight: the trial court, the prosecution and his counsel erred by neglecting to provide jury instructions on lesser included offenses for aggravated kidnapping and aggravated robbery, (*ECF*. No. 1 at 30-35); the jury instructions improperly defined the elements of aggravated kidnapping, (*id.* at 35-40); the sentencing court failed to properly weigh the interests of justice and trial counsel failed to object to consecutive sentences, (*id.* at 40-41); and ineffective assistance of trial and appellate counsel (*id.* at 41-51). Ground Eight is taken nearly verbatim from the PCP, but was largely omitted from the petition for certiorari. ECF No. 8-4. Petitioner concludes his petition by asserting that he is "factually innocent." (*id.* at 51.)

### III. ANALYSIS

#### A. Ground One is dismissed as vague and conclusory

Petitioner's *pro se* pleadings are entitled to liberal construction. *See, Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed.") (internal quotations omitted) (internal citations omitted.) *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.")

"Nevertheless, the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations." *Northington,* 973 F.2d at 1521.

Ground One quotes statutory authority but contains neither sufficient details nor any requisite analysis to articulate an independent basis for relief. Petitioner's Ground One states: "The state court's decision on direct appeal and post-conviction did result in decisions contrary to clearly established federal law as well as unreasonable application of the same and resulted in a decision based on unreasonable application of facts in light of the evidence presented in the state courts. " The factual basis for the claim presented is stated as follows:

> "In pursuance of 28 USC §2254(d)(1) and (2) the state courts clearly failed to render decisions that were not contrary to or that involved unreasonable application of clearly established federal law as determined by the U.S. Supreme Court and/or a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, as explained herein because all issue denials lack evidence for the decision and are contrary to federal law as I argued in my prior pleadings. "

(ECF No.1, at 8.) Petitioner neglects to cite any specific facts or issues, nor identify any settled federal law, nor provide any analysis for how any state court decision was in error in this claim. Instead, Petitioner makes a general reference to other grounds presented in his claim. As those issues will be addressed separately in this decision, Ground One fails to raise any unique basis for federal habeas relief. Ground One is therefore dismissed as vague and conclusory. *See Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992). ("Nevertheless, the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations.").

8

**B. Procedural Default**

Procedural default is an affirmative defense that must be raised by the respondent. *Gray*

*v. Netherland*, 518 U.S. 152, 165-66 (1996). (" [T]he [respondent] would have been obligated to

raise procedural default as a defense, or lose the right to assert the defense thereafter. ") The

United States Supreme Court has declared that when a petitioner has "'failed to exhaust his state

remedies and the court to which the petitioner would be required to present his claims in order to

meet the exhaustion requirement would now find the claims procedurally barred' the claims are

considered exhausted and procedurally defaulted for purposes of federal habeas relief." *Thomas*

*v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S. 722,

735 n.1 (1991)). Absent "exceptional circumstances," the Utah Supreme Court will decline to

consider issues which have not been "presented to the district court in such a way that the court

has an opportunity to rule on [it]." *Patterson v. Patterson*, 2011 UT 68, ¶ 12.

Utah's Post-Conviction Remedies Act states in relevant part:

> A person is not eligible for relief under this chapter upon any
> ground that:
> (a) may still be raised on direct appeal or by a post-trial motion;
> (b) was raised or addressed at trial or on appeal;
> (c) could have been but was not raised at trial or on appeal;
> (d) was raised or addressed in any previous request for post-
> conviction relief or could have been, but was not, raised in a
> previous request for post-conviction relief; or
> (e) is barred by the limitation period established in Section 78B-9-
> 107.

Utah Code Ann. § 78B-9-106(1) (2023).

Respondent asserts procedural default as an affirmative defense for several of Petitioner's

claims. [5] Respondent argues that Ground Two (the evidence was insufficient to establish

---

[5] Williams's petition for certiorari of his PCP attempts to incorporate all his previous filings by reference through a
passing reference to Rule 10(c) of the Utah Rule of Civil Procedure. However, Williams does not provide, nor has

Petitioner was a party to aggravated robbery), and Petitioner's ineffective assistance claim regarding counsel's failure to assert a claim that trial counsel had a conflict of due to their former employment are procedurally defaulted because they are unexhausted. Respondent also asserts procedural bar for Petitioner's claim that his appellate counsel was ineffective for failure to preserve a claim that trial counsel was ineffective for failure to request a "co-defendant jury instruction."

Respondent argues that Ground Five (the trial court, the prosecution and Petitioner's counsel erred by neglecting to provide jury instructions on lesser included offenses for aggravated kidnapping and aggravated robbery) and Ground Six (the jury instructions improperly defined the elements of aggravated kidnapping) are procedurally defaulted because they were rejected by the state courts on independent and adequate procedural grounds.

### 1. Unexhausted issues

Unexhausted issues are those which are procedurally defaulted because they were not fairly presented to the state's highest court and the state court would now consider them procedurally barred. *Thomas*, at 1221. In Ground Two, Petitioner claims that the evidence produced at trial was insufficient to establish that he had been a party to aggravated robbery. This claim was presented to the state trial court on appeal but was never fairly presented to the state supreme court in his petition for certiorari. Nor did Petitioner present to the Utah Supreme Court the claim that his counsel was ineffective for failing to argue that trial counsel had a

---

this court's independent research discovered, authority to support the proposition that an issue may be fairly presented to the state supreme court merely by incorporating the entire contents of multiple dockets by reference. This court concludes that Williams's reference was inadequate to give the Utah Supreme Court fair notice of any issues which cannot reasonably be inferred directly from the contents of Williams's petition. Under Utah law, then, Williams may not raise those arguments in future PCPs, and the state courts would determine them to be procedurally barred. As such, issues not expressly mentioned in his petitions for certiorari are deemed by this court to be unexhausted.

conflict of interest due to their former employment. These claims are dismissed for being unexhausted.

Petitioner raises the issue of a "co-defendant jury instruction" in both his PCP and in Ground Eight of his federal petition. Both documents contain identical language: "Appellate counsel was ineffective for failure to argue trial counsel's ineffectiveness for failure to present the need for co-defendant jury instructions pursuant to § 77-17-5 to warn the jury of complications when a case has an accomplice." (ECF Nos. 1, at 50; 29-3, at p. 21) (minor corrections for spelling and grammar). Petitioner neglects to offer any additional support for this allegation.

This court declines to rule on whether Petitioner's claims related to co-defendant and/or accomplice liability jury instructions are exhausted because they are inscrutably vague and conclusory. Petitioner's claim for "co-defendant jury instructions" found in Ground Eight of the Petition is vague and conclusory, making it difficult to discern his precise legal argument. Petitioner cites Utah Code §77-17-5 in both his PCP and federal petition. Utah Code §77-17-5 pertains only to corporate liability. Utah Code Ann. § 77-17-5 (2023) ("In a criminal case the existence, constitution, or powers of any corporation may be proved by general reputation, or by the printed statutes of the state, government, or country by which this corporation was created.") Presumably, Petitioner's intended citation was to Utah Code §77-17-7, which relates to situations where a defendant is convicted based on uncorroborated testimony of an accomplice:

> (1) A conviction may be had on the uncorroborated testimony of an accomplice.
> (2) In the discretion of the trial court, an instruction to the jury may be given to the effect that such uncorroborated testimony should be viewed with caution, and such an instruction shall be given if the trial judge finds the testimony of the accomplice to be self contradictory, uncertain, or improbable.

Utah Code Ann. § 77-17-7 (2023). Nevertheless, because Petitioner's accomplice testified as a witness for the defense, that section is also irrelevant. To the extent that anything in the accomplice's testimony supported a conviction, it was corroborated by other evidence. Therefore, this court cannot discern a viable claim from Petitioner's reference to §77-17-5.

Petitioner's petition for certiorari doesn't use the language "co-defendant" instructions, but contains scattered arguments related to "accomplice liability" jury instructions. (*See,* ECF No. 8-4, at 15, 20-21.) To the extent that Petitioner's claims related to "co-defendant jury instructions" overlap his claims for "accomplice liability" jury instructions in his PCP petition for certiorari, the claims may be exhausted. Nevertheless, the arguments remain so vague and conclusory that the court can discern no valid claim upon which Petitioner can prevail. Regardless of whether this issue was exhausted, it is dismissed for being vague and conclusory. *See Northington*, 973 F.2d at 1521.

## 2. Issues dismissed on independent and adequate state grounds

Grounds Five and Six are as follows: the trial court, the prosecution and Petitioner's counsel erred by neglecting to provide jury instructions on lesser included offenses for aggravated kidnapping and aggravated robbery; and, the jury instructions improperly defined the elements of aggravated kidnapping are procedurally defaulted because they were rejected by the state courts on independent and adequate procedural grounds. The Utah Court of Appeals ruled that both claims were barred under the Utah Post-Conviction Remedies Act because the claims could have been raised at trial, but were not raised at trial. (ECF No. 8-4, at 27) (*citing*, Utah Code Ann. §78B-9-106(1)(c)(2017)).

## 3. Exception to procedural bar

A procedural bar may be avoided if a petitioner can demonstrate either cause and prejudice or a fundamental miscarriage of justice. *Thomas*, 218 F.3d at 1221 ("This court may

not consider issues raised in a habeas petition 'that have been defaulted in state court on an independent and adequate procedural ground[] unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice. '") (quoting *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998)(alteration in original)). Petitioner invokes ineffective assistance of counsel, lack of resources and fundamental fairness to excuse his procedural defaults.

### a. Cause and prejudice

A petitioner may be able to overcome procedural default if he can establish "cause" to excuse the procedural default and demonstrate that he suffered "actual prejudice" from the alleged error. *Davila v. Davis*, 582 U.S. 521, 524 (2017). "[T]o satisfy the 'cause' standard, a petitioner must show that 'some objective factor external to the defense' impeded his compliance with Utah's procedural rules." *Dulin v. Cook*, 957 F.2d 758, 760 (10th Cir. 1992) (citations omitted). Where the alleged cause and prejudice is ineffective assistance of counsel, the petitioner must satisfy both prongs of *Strickland*'s familiar two-pronged standard: (1) deficient performance by counsel, measured by a standard of "reasonableness under prevailing professional norms;" and, (2) prejudice to the defense caused by that deficient performance. *Strickland,* 466 U.S. at 687-88. Where there is no constitutional right to counsel, attorney error cannot provide cause to excuse a procedural default. *Davila*, 582 U.S. at 529; *Sayed v. Trani*, 731 F. App'x 691, 697 (10th Cir. 2018). Failure to raise an issue in a proceeding for which there is no constitutional right to counsel cannot amount to constitutionally ineffective assistance of counsel. *See Davila*, 582 U.S. at 529 ("[I]n proceedings for which the Constitution does not guarantee the assistance of counsel at all, attorney error cannot provide cause to excuse a default."); *Ross v. Moffitt*, 417 U.S. 600, 619 (1974) ("[R]espondent was denied no right secured by the Federal Constitution when North Carolina refused to provide counsel to aid him in obtaining discretionary appellate review."). The Supreme Court has made clear that attorney performance

is strongly presumed to have been adequate. *Strickland,* 466 U.S. at 690. "Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed." *Davila,* 582 U.S. at 533. A strategic decision to forgo a claim on appeal is only deficient performance if the claim was plainly stronger than those actually presented to the appellate court. *Id.*

Under Tenth Circuit case law, lack of legal resources and knowledge (including petitioner's own misunderstanding) are circumstances that do not carry petitioner's burden to show cause. *Gilkey v. Kansas*, 58 F. App'x 819, 822 (10th Cir. 2003) (unpublished) (holding limited legal knowledge insufficient to show cause for procedural default); *Rodriguez v. Maynard*, 948 F.2d 684, 688 (10th Cir. 1991) (holding petitioner's *pro se* status and corresponding lack of awareness and training on legal issues do not constitute proper cause for not previously raising claims). "Indeed, these are factors . . . that are *internal* to Petitioner's defense." *Ardon-Aguirre v. Sorensen*, No. 2:12-CV-914 DB, 2013 U.S. Dist. LEXIS 150269, at *11 (D. Utah October 18, 2013) (emphasis in original).

Meanwhile, to demonstrate prejudice, "'[t]he habeas petitioner must show not merely that … errors … created a possibility of prejudice, but that they worked to his *actual* and substantial disadvantage.'" *Butler v. Kansas*, 57 F. App'x 781, 784 (10th Cir. 2002) (unpublished) (alteration in original) (quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (emphasis in original)). The petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694.

Petitioner argues that his procedural defaults should be excused because of ineffective assistance of counsel and fundamental fairness. Petitioner has not met his burden of showing that

objective factors external to the defense impeded him in meeting state procedural demands for any of the procedurally defaulted issues.

### i. Petitioner had no constitutional right to counsel after his direct appeal to the Utah Court of Appeals

Petitioner's claim that the evidence presented at trial was insufficient to support the aggravated robbery conviction is unexhausted. Petitioner argues the procedural default should be excused because of ineffective assistance of counsel. Assistance of counsel can only be constitutionally defective where there is a constitutional right to counsel. *Davila*, 582 U.S. at 529. Petitioner had no constitutional right to counsel for his discretionary petition for certiorari on his direct appeal. *See Zaragoza v. State*, 2017 UT App 215, ¶ 41. Therefore, his counsel's decision not to include the unexhausted issues in his petition for certiorari cannot be constitutionally defective assistance and cannot serve as cause and prejudice to excuse Petitioner's procedural defaults.

Furthermore, Petitioner fails to offer adequate factual or legal support for his claim that he was entitled to counsel for his PCP proceedings. Petitioner suggests that the holdings of *Martinez v. Ryan,* 566 U.S. 1 (2012) and *Trevino v. Thaler,* 569 U.S. 413 (2013), entitled him to counsel for his collateral attack on his conviction because the Utah Rules of Appellate Procedure effectively preclude a claim of ineffective assistance of trial counsel on direct appeal.

Petitioner first argues that under *Martinez* and its progeny, the procedural bar does not apply in the federal habeas petition where a petitioner did not have counsel in a state habeas proceeding. (ECF No. 1 at 8). This argument fundamentally misstates the holding of *Martinez*. *Martinez* held that when a state (Arizona) eliminated the possibility of raising a claim of ineffective assistance of counsel on direct appeal, equity required the state to provide counsel for collateral proceedings. *Martinez,* 566 U.S. at 17. *Trevino* extended *Martinez* and held that

prisoners in Texas were entitled to counsel for collateral proceedings because, even though the Texas rules technically allowed a claim of ineffective assistance on direct appeal, the procedural framework effectively precluded a successful claim. *Trevino*, 569 U.S. at 429 (holding petitioner entitled to counsel when "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal.") Specifically, *Trevino* relied on two factors that warranted extension of *Martinez*. First, the highest criminal court in Texas had acknowledged that the Texas rules of procedure make it "virtually impossible for appellate counsel to adequately present an ineffective assistance [of trial counsel] claim" on direct review. *Trevino*, 569 U.S. at 423, (quoting *Robinson v. State*, 16 S.W.3d 808, 811 (Tex. Crim. App. 2000).) For example, a prisoner is required to file a motion for new trial to develop the record for a claim of ineffective assistance of counsel within thirty days of sentencing, but the necessary trial transcripts are typically not available until several months after the deadline. *Trevino*, 569 U.S. at 424. Second, the Texas Court of Criminal Appeals has expressly stated that collateral review is the preferred vehicle for asserting ineffective assistance of trial counsel. *Id*. at 426. Thus, *Trevino* concluded that equity requires that inmates in Texas be provided counsel for collateral attack because the procedural framework functionally diverted claims of ineffective assistance of counsel into the collateral review process.

Petitioner does not cite, and this court could not discover, binding precedent holding that *Martinez* and *Trevino* apply to the Utah procedural framework. Neither the Tenth Circuit Court of Appeals, nor the Supreme Court has ruled on whether equity requires counsel for collateral proceedings under Utah's procedural framework. However, this court has issued contrasting opinions on the issue. *Compare Lafferty v. Crowther*, 2016 U.S. Dist. LEXIS 138845, at *4 (D.

Utah Sep. 30, 2019) (applying *Trevino* and *Martinez* to Utah's procedural framework), *with*, *Finlayson v. Utah*, 2019 U.S. Dist. LEXIS 170108, at 32 (finding that *Trevino* and *Martinez* do not apply to Utah's procedure). These cases are not binding precedent. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.")

Petitioner offers no compelling argument in favor of following *Lafferty* over *Finlayson*. In *Lafferty*, this court acknowledged multiple factors that weighed against applying *Trevino*/*Martinez* in Utah. *Lafferty* recognized that the Utah rules allow an inmate to bring claims of ineffective assistance of trial counsel on direct appeal. *Lafferty*, at *3. *Lafferty* also acknowledged that the time limitations in Utah were comparable to those in Oklahoma, which the Tenth Circuit had deemed to be sufficiently reasonable and flexible to allow effective challenges for ineffective assistance of trial counsel on direct appeal. *Lafferty*, at *4 (citing *Fairchild v. Trammell*, 784 F.3d 702 (10th Cir. 2015)). *Lafferty* weighed these factors against the fact that the Utah Supreme Court had stated that the procedure for remanding a case to develop a record on direct appeal "was clearly not intended to provide for remand in the typical ineffective assistance case where the parties dispute whether trial counsel's actions reflected some strategy, given the facts established by the record." *Lafferty* at *5 (quoting *State v. Tennyson*, 850 P.2d 461, 468 n. 5 (Utah Ct. App. 1993)). *Lafferty* concluded that "[w]hile Utah law does provide flexibility in time limitations and availability of transcripts, these are inadequate when most of the evidence supporting ineffective assistance of counsel claims exist outside the court record and require investigation to uncover and develop." *Lafferty* at *5-6.

In contrast, *Finlayson* reached an opposite conclusion. *Finlayson* acknowledged the *Lafferty* decision but conducted an independent analysis of Utah's framework using the Tenth Circuit's *Fairchild* decision as a template. *Finlayson* at *21-*32. *Finlayson* cited "a robust history of counsel raising claims of ineffective assistance of counsel on direct appeal" in Utah. *Finlayson*, at *30-31. Further, *Finlayson* confirmed that the Utah rules had allowed the appellant adequate access to the record to assert an ineffective assistance of counsel claim. *Finlayson* analyzed the briefing schedule and determined that in that case, appellate counsel had access to the transcripts and record for nearly eight months prior to filing a brief asserting ineffective assistance of trial counsel eighteen months after sentencing. *Finlayson* at *30. *Finlayson* concluded that the Utah framework was sufficiently flexible to allow the petitioner ample time and access to transcripts to prepare a claim for ineffective assistance of counsel. *Finlayson*, at *32.

In light of the persuasive analysis in *Finlayson* that many inmates challenge effectiveness of trial counsel on direct appeal, this court declines to apply a rule that all inmates are entitled to counsel for PCP proceedings in Utah. Petitioner fails to provide sufficient factual or legal support for the proposition that the Utah procedural framework inhibited his claim of ineffective assistance of counsel on direct appeal. Therefore, Petitioner fails to show that he was constitutionally entitled to counsel for his PCP proceedings.

### ii. Petitioner has not shown that any of the grounds he asserts in his Petition are plainly superior to those presented by counsel on direct appeal

Because Petitioner had no right to counsel for his discretionary petition for certiorari on direct appeal, nor for his PCP proceedings, Petitioner cannot excuse his procedural default of unexhausted claims by asserting ineffective assistance of counsel unless he can show that the issue was plainly superior to any of the issues presented by counsel in his direct appeal.

Petitioner's appellate counsel argued that (1) the evidence presented at trial was insufficient to support the aggravated robbery conviction; (2) the trial court should have allowed testimony that the assault was a spontaneous response to the discovery of child pornography on the victim's cell phone; and (3) the trial court should have granted Petitioner's motion for a mistrial due to unanticipated testimony referencing prior bad acts.

The procedurally defaulted issues are (1) the trial court erred by failing to provide lesser include offense instructions on aggravated kidnapping and aggravated robbery; (2) the trial court erred by allowing an aggravated kidnapping instruction that did not require a "substantial period of time" for restraint or detention; (3) the trial court erred by including the phrase "circumstances exposing the victim to risk of bodily injury;" and (4) that appellate counsel was ineffective for failure to assert a claim that trial counsel had a conflict of interest as a result of their former employment. The last of these issues was presented to the court of appeals by Petitioner's counsel but abandoned in the petition for certiorari.

Petitioner fails to supply the requisite analysis to establish that any of the procedurally defaulted issues are plainly superior to those presented by counsel on appeal. Therefore, Petitioner fails to overcome the procedural bar with his claim that counsel provided constitutionally ineffective assistance by failing to preserve issues for his habeas petition.

### iii. Petitioner fails to supply cause and prejudice to excuse his procedural default for the issues dismissed by the state courts on independent and adequate state grounds

The state courts dismissed Petitioner's fifth and sixth grounds for relief on independent and adequate state grounds. Petitioner fails to supply cause and prejudice to overcome either dismissal.

**(a) Petitioner fails to supply cause and prejudice to excuse his procedural default of Ground Five**

Petitioner suggests that his procedural default of the issue of lesser included jury instructions should be excused because of ineffective assistance of counsel. The PCP court rejected this argument and held that Petitioner's arguments fail both prongs of the *Strickland* test. The Utah Court of Appeal affirmed the PCP court's decision that Petitioner had not established that his counsel was ineffective because Petitioner had not shown that he was entitled to the lesser-included offense instruction. Further, the state courts concluded that he had failed to show a reasonable probability that he would have received a more favorable outcome even if the instructions had been included. (ECF No. 8-2, at 13.)

Petitioner fails to show that his counsel provided ineffective assistance of counsel by neglecting to request lesser included jury instructions. Utah courts apply a two-stage test to determine whether a lesser included offense instruction is required. *State v. Norton*, 2020 UT 46, ¶54. First, the court must determine whether there is overlap in the statutory elements of the charged offense and the lesser included offense. *Id.* Next the court must determine whether the trial evidence "provides a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." *Id. (*quoting *State v. Baker*, 671 P.2d 152, 159 (Utah 1983)). In making that determination, Utah courts view the evidence "in the light most favorable to the defendant requesting the instruction. " *State v. Powell*, 2007 UT 9, ¶ 27.

Petitioner's arguments that he was entitled to lesser included instructions concentrate on the first stage of the analysis, that the statutory elements overlap. However, Petitioner fails to provide analysis for the second stage, that the evidence at trial provided a rational basis for acquittal of the charged offense, and conviction of the lesser included offense.

The trial evidence, viewed in the light most favorable for Petitioner, provides no rational basis for conviction of a lesser included offense. The jury was presented with two versions of Petitioner participation in the crimes. The victim testified that Petitioner was present for the assault with the walking stick but did not personally participate. The victim also testified that Petitioner actively participated in the robbery and kidnapping immediately thereafter. This evidence, if believed, supports Petitioner's convictions. On the other hand, Petitioner and his witness both testified that Petitioner did not participate in any of the charged offenses. This evidence, if believed, supports Petitioner's total innocence defense. Petitioner continues to assert his total innocence and identifies no evidence which supports both acquittal of the charged crimes and conviction of the lesser included charges.

Petitioner's attorneys' decision not to request lesser included instructions was within the wide range of professionally reasonable assistance. Requesting lesser included charges would have undermined Petitioner's total innocence defense. Furthermore, Petitioner cannot show prejudice by the decision because there was no rational basis for a conviction on lesser included charges even if they had been requested. Therefore, Petitioner's fails to provide cause and prejudice to excuse the procedural default on the issue of lesser included jury instructions.

### (b) Petitioner fails to supply cause and prejudice to excuse his procedural default of Ground Six

Petitioner suggests that his procedural default of the issue of whether the trial court erred by the omission of the phrase "for a substantial period of time" and/or "in circumstances exposing the victim to risk of bodily injury" from the aggravated kidnapping instructions should be excused because of ineffective assistance of counsel. The omitted phrases derive from the first two of five alternative definitions for kidnapping in the Utah Code. Utah Code Ann. § 76-5-301(2)(a)-(e)(2023). The first alternative requires detention for "any substantial period of time. "

Utah Code Ann. § 76-5-301(2)(a)(2023). The second alternative requires detention "in circumstances exposing the victim to risk of bodily injury. " Utah Code Ann. § 76-5-301(2)(b)(2023).

The PCP court concluded that Petitioner's arguments failed both prongs of the *Strickland* test and rejected Petitioner's claims on summary judgment. (ECF No. 8-2, 14). Utah Court of Appeals affirmed. (ECF No. 8-4, at 27) Both the PCP court and the court of appeals noted that Utah's aggravated kidnapping statute does not require the victim to be detained for any minimum period of time. (ECF No. 8-2, at 14) ("[T]he statute does not require that the victim be detained or restrained for any minimum period of time before the crime of aggravated kidnaping occurs.") (citing Utah Code Ann. § 76-5-302 (1995); *State v. Finlayson*, 2000 UT 10, ¶ 20); (ECF No. 8-4, at 28). Further, both courts also concluded that Petitioner had failed to demonstrate any prejudice from omission of the phrase because the evidence at trial showed that the victim had been detained for approximately twelve hours. (ECF Nos. 8-2, at 15; 8-4, at 2.)

Petitioner raises a potentially colorable argument that omission of the phrase "for a substantial period of time" improperly omitted a statutory element from his jury instructions. Petitioner suggests that in the absence of the phrase "a substantial period of time" the instructions should have required proof of one of the other four other statutory alternatives, *e.g.,* circumstances exposing the victim to bodily injury. *See* Utah Code Ann. §76-5-301(2)(a)-(e) (2011). However, that issue of state law has been answered by the state courts and is therefore outside the scope of federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

The question before this court is whether Petitioner's counsel's failure to object to the omission of the phrase "for a substantial period of time" violated his federal due process rights. As both the PCP court and the court of appeals noted, Petitioner cannot satisfy the second prong of the *Strickland* test because he cannot demonstrate any reasonable likelihood of a different outcome if the phrase had been included in his instructions. Evidence at trial showed that the victim had been detained for approximately twelve hours. Petitioner cannot support the proposition that the twelve-hour captivity would fall below the threshold for "a substantial period of time" in §76-5-301-(2)(a). Therefore, because Petitioner fails to show prejudice to excuse his procedural default, Ground Six is denied.

The procedural bar thus withstands Petitioner's assertions of cause and prejudice for all of the procedurally defaulted claims.

### b. Miscarriage of justice

A petitioner may also overcome the procedural bar if he can show that his conviction resulted in a "fundamental miscarriage of justice." *See Thomas*, 218 F.3d at 1221 (alteration omitted) (citation omitted). A fundamental miscarriage of justice may be proven by actual innocence where a petitioner can show that "in light of new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 569 U.S. 383, 386-87 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). To be plausible, an actual-innocence claim must be grounded on solid evidence not adduced at trial. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citing *Schlup,* at 324). The petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence" presented in his habeas petition. *Id*. Because such evidence is so rare, "in virtually every case, the allegation of actual innocence has been summarily rejected. " *Id.* (citation omitted).

Petitioner's rehashing of the evidence in state proceedings falls far short of proving his actual innocence. Petitioner concludes his Petition by claiming that he is "factually innocent by the victim's own testimony. " ECF No. 1, at 51. The victim offered no testimony at trial which supports Petitioner's claim that he was factually innocent, so Petitioner's argument appears to be a reference to the victim's initial responses to the police when he was rescued from the canyon. *See* ECF No. 1 at 43. Most of Petitioner's evidence in support of his actual innocence claim was already presented to the jury, who chose to accept the victim's version of events rather than the version presented by Petitioner and his witness.

Petitioner argues that his counsel should have challenged the victim's testimony more aggressively by pointing out his inconsistent prior statements to the police. However, his counsel's decision not to aggressively cross examine the victim falls within the wide range of professionally reasonable trial strategy. The fact that the victim initially offered vague and contradictory statements to the police rather than confessing his involvement in a drug dealing operation, does not sufficiently undermine victim's testimony at trial such that no reasonable juror would have convicted Petitioner. A reasonable juror might reasonably have believed that the victim told the truth at trial even though at that time he was rescued by the police, suffering from the immediate trauma of twelve hours of captivity and abuse, the victim initially lied to the police to avoid confessing to his own liability in criminal activity, or to avoid retribution by Petitioner and the other captors whose whereabouts were at that time unknown. Petitioner's counsel might reasonably have believed that the risks of challenging the victim's testimony based on the unsworn statements made in those circumstances outweighed the potential benefits to Petitioner's defense.

This court may not overturn the conviction without the presentation of new evidence so compelling that no reasonable juror could find him guilty beyond a reasonable doubt. Indeed, the kernel of the Court's analysis regarding actual innocence is not whether Petitioner urgently believes there were errors--or even whether there were indeed errors--in state proceedings, but whether Petitioner is factually innocent. This factual innocence must also be supported with new evidence, which Petitioner has not provided.

### 4. Summary

In sum, the Court concludes that four of Petitioner's issues are procedurally defaulted. Ground Two and Petitioner's claim that his counsel provided constitutionally ineffective assistance by failing to assert a claim that trial counsel had a conflict of interest as a result of their former employment are procedurally defaulted because they are unexhausted. Grounds Five Ground Six are procedurally defaulted because they were rejected by the state courts on independent and adequate procedural grounds. A fifth issue (whether appellate counsel was ineffective for failure to preserve a claim that trial counsel was ineffective for failure to request a "co-defendant" jury instruction) is dismissed as vague and conclusory. Petitioner has failed to show cause and prejudice to excuse his procedural default. Further, Petitioner has failed to produce sufficient evidence to establish his actual innocence to excuse his defaults under the miscarriage-of-justice exception to the procedural bar. Habeas relief is thus denied as to each of these issues.

### C. Merits Analysis

### 1. Standard of Review

The standard of review to be applied in federal habeas cases is found in § 2254, under which this habeas petition is filed, which states:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim . . . resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or . . .
> resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C.S. § 2254(d) (2023). " [A] determination of a factual issue made by a State court shall

be presumed to be correct. The applicant shall have the burden of rebutting the presumption of

correctness by clear and convincing evidence. " *Id.* § 2254(e)(1).

This "highly deferential standard," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)

(quotation marks and citation omitted); *see Littlejohn v. Trammell*, 704 F.3d 817, 824 (10th Cir.

2013), is "'difficult to meet,' because [the statute's] purpose is to ensure that federal habeas relief

functions as a 'guard against extreme malfunctions in the state criminal justice systems,'and not

as a means of error correction." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (quoting *Harrington v.*

*Richter*, 562 U.S. 86, 102-103 (2011) (citation omitted)); *see also Rippey v. Utah*, 783 F. App'x

823, 825 (10th Cir. 2019) ("If this deferential 'standard is difficult to meet, that is because it was

meant to be.'" (quoting *Harrington*, 562 U.S. at 102)). This court is not to determine whether the

state court decisions were correct or whether this court may have reached a different outcome.

*See Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "The role of federal habeas proceedings,

while important in assuring that constitutional rights are observed, is secondary and limited."

*Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). "When a federal claim has been presented to a

state court and the state court has denied relief, it may be presumed that the state court

adjudicated the claim on the merits in the absence of any indication or state-law procedural

principles to the contrary." *Harrington*, at 99. And, "[t]he petitioner carries the burden of proof." *Cullen*, 563 U.S. at 181.

### a. Factual findings

Habeas relief may be justified "if the state court's adjudication of a claim on the merits 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012) (quoting 28 U.S.C. § 2254(d)(2) (2023)). State-court factual findings "are presumed correct unless the applicant rebuts that presumption by 'clear and convincing evidence.'" *Id*. (quoting 28 U.S.C. § 2254(e)(1) (2023)). Presumption of correctness applies to state trial-court and appellate-court findings. *See Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015). The presumption of correctness also applies to implicit factual findings. *See Ellis v. Raemisch*, 872 F.3d 1064, 1071 n.2 (10th Cir. 2017). The best way to explain the clear-and-convincing-evidence standard is that "it requires a high degree of probability." 2 Edward J. Imwinkelried et al., *Courtroom Crim. Evidence* § 2916 (2020). It is a "demanding but not insatiable" because "'[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). But, the Court "will not conclude a state court's factual findings are unreasonable merely because [it] would have reached a different conclusion in the first instance." *Smith v. Duckworth*, 824 F.3d 1233, 1241 (10th Cir. 2016) (internal quotation marks omitted).

Reviewing a state court's decision, the Court must limit its inquiry "to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181. This reflects that "[t]he federal habeas scheme leaves primary responsibility with the state courts." *Id*. at 182. And considering federal statutory "intent to channel prisoners' claims first to the state courts, " it would not make sense "to allow a petitioner to overcome an adverse state-court

decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively de novo. " *Id*.

### b. Legal determinations

Under *Carey v. Musladin*, 549 U.S. 70 (2006), the court must first determine whether clearly established federal law exists relevant to Petitioner's claims. *House v. Hatch*, 527 F.3d 1010, 1017-18 (10th Cir. 2008); *see also Littlejohn*, 704 F.3d at 825. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle,* at 67-68. Only after answering yes to that "threshold question" may the Court go on to "ask whether the state court decision is either contrary to or an unreasonable application of such law." *House*, 527 F.3d at 1018.

> [C]learly established [federal] law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*Id.* at 1016. Further, "in ascertaining the contours of clearly established law, we must look to the '*holdings* as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Littlejohn*, 704 F.3d at 825 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (emphasis added) (citations omitted)); *see also Fairchild v. Trammel*, 784 F.3d 702, 710 (10th Cir. 2015) (stating "Supreme Court holdings 'must be construed narrowly and consist only of something akin to on-point holdings'" (quoting *House*, 527 F.3d at 1015)). And, in deciding whether relevant clearly established federal law exists, this Court is not restricted by the state court's analysis. *See Bell v. Cone*, 543 U.S. 447, 455 (2005) ("[F]ederal courts are not free to presume that a state court did not comply with constitutional dictates on the

basis of nothing more than a lack of citation."); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) ("[A] state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'") (citation omitted).

If that threshold is overcome, this Court may grant habeas relief only when the state court has "unreasonably applied the governing legal principle to the facts of the petitioner's case." *Walker v. Gibson*, 228 F.3d 1217, 1225 (10th Cir. 2000) (citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). This deferential standard does not let a federal habeas court issue a writ merely because it determines on its own that the state-court decision erroneously applied clearly established federal law. *See id.* "'Rather that application must also be unreasonable.'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. at 411). Indeed, "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Harrington*, 562 U.S. at 100 (emphasis in original) (quoting *Williams v. Taylor*, 529 U.S. at 410).

This highly demanding standard means to pose a sizable obstacle to habeas petitioners. *Id.* at 102. Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id*. It maintains power to issue the writ when no possibility exists that "fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents. It goes no further." *Id.* To prevail in federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. It is against this backdrop that the Court now applies the standard of review here.

### 2. Petitioner fails to show that the exclusion of testimony related to alleged child pornography on the victim's phone violated his Constitutional rights

Petitioner argues that the trial court deprived him of his right to a fair trial by excluding testimony that the assault with a walking stick by his associate was a spontaneous response to discovery of child pornography on the victim's telephone. ECF No. 1 at 12-14, 24-27. The Court styles this issue to reflect the standard of review: Was the Utah Court of Appeals's determination[6] that the exclusion of testimony that the assault with a walking stick was a spontaneous response to discovery of child pornography on the victim's telephone was harmless error (ECF No. 1, at 12-14, 24-27.) "based on an unreasonable determination of the facts in light of the evidence presented" or "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"? *See* 28 U.S.C.S. §2254(d) (2023).

### a. Petitioner fails to overcome the presumption in favor of the state court's factual findings

Petitioner argued on direct appeal that the trial court had violated his due process rights by excluding exculpatory evidence. The court of appeals upheld the conviction and held that any error regarding the exclusion was harmless. *Williams*, at ¶ 27. For convenience and consistency, the court recounts the relevant facts, taken directly from the Utah Court of Appeals' decision on direct appeal.

> In January 2011, Williams arranged to meet the victim at a grocery store in an attempt to settle a drug debt the victim owed to Williams's girlfriend. Williams eventually drove the victim to the home of his co-defendant, David Nichols. A short time after their arrival, Nichols beat the victim with a walking stick, rendering him unconscious. That beating was allegedly a reaction to an insult made about Nichols's sister and after Nichols had discovered something that upset him on the victim's cell phone. When the

---

[6]The Court looks to the court of appeals's decision on direct appeal, as it is the last reasoned state-court opinion on the claim at issue. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

victim awoke, Nichols and Williams were tying him to a chair and threatening to kill him. They took the victim's wallet and cell phone, as well as a food stamp card worth several hundred dollars. They also took the victim's coat and shoes.

Williams then left to get the victim's car and bring it back to Nichols's house. When he returned with the car, Williams participated in going through the victim's property that was in his car. Williams also brought the title to the car into the house. Nichols wrote a bill of sale transferring the title of the car to Williams, which the victim was forced to sign.

Williams and another associate, Max Dozah, then put the victim in Williams's girlfriend's car and told him not to move. They drove the victim up Parley's Canyon and then up Emigration Canyon, threatening him as they drove. There was a metal pipe in the car, and Dozah threatened to use the pipe both to break the victim's legs and to kill him. Williams told the victim that "this is how they [took] care of their debts, their problems. " They stopped the car at the snow closure gate in Emigration Canyon and made the coatless victim get out. Dozah also exited the car and asked Williams to hand him the metal pipe. Williams held the pipe out to Dozah, but Dozah ultimately did not take it. After screaming threats at the victim, Dozah reentered the car, and Dozah and Williams drove away, leaving the victim in the canyon. The victim later flagged down someone who called for help. The police responded, and the victim was eventually transported to a hospital via ambulance.

*Williams*, at ¶¶ 2-4. The paramount consideration here is that, by statute, this passage must be presumed correct and its findings overturned only if unreasonable as viewed against clear and convincing evidence identified by Petitioner.

Petitioner does not present clear and convincing evidence sufficient to prove that the Utah courts' factual findings are unreasonable. Throughout his federal Petition, Petitioner relies on inconsistencies between the victim's testimony at trial and the version of events the victim described to the police immediately after he was rescued. Evidence that the victim was untruthful when he originally met with police, is far different than proving that Petitioner is factually innocent. Therefore, even though the victim was less that forthcoming when he originally met

with police, that fact is far below the standard necessary to overcome the presumption in favor of the state court's factual findings.

### b. Petitioner fails to show that the state court unreasonably applied clearly established federal law

The threshold question is whether clearly established federal law exists relative to Petitioner's claim. *House*, 527 F.3d at 1017-18. The trial court allowed Petitioner's associate to testify that he assaulted the victim as a spontaneous reaction to an insult and the discovery of unspecified objectionable material on the victim's telephone. However, the court excluded specific mention of child pornography. On appeal, the Utah Court of Appeals reasoned that the exclusion was harmless because even if the assault was unplanned, evidence at trial supported the conclusion that Petitioner intentionally participated in the aggravated crimes after the assault had happened. *Williams*, at ¶21. Therefore, the court reasoned, even if Petitioner's proffered evidence had been presented and is assumed to be true, it would not create a sufficiently high likelihood of a different outcome to undermine confidence in the verdict. *Id*.

Petitioner fails to show that the court's legal determination was unreasonable, but also, crucially, that it violated clearly established federal law. Petitioner argues that the exclusion denied him a fair trial and violated his federal right to present a complete defense as established by the Supreme Court in *Holmes v. South Carolina*, 547 U.S. 319 (2006). In *Holmes*, the trial court excluded evidence of third-party liability, which if true, would have proved that the defendant had not committed the crime. *Id*., at 330. ("[P]etitioner proffered evidence that, if believed, squarely proved that [a third party], not petitioner, was the perpetrator.") The court excluded the evidence based on a determination that the state's forensic evidence of defendant's guilt was so overwhelming that defendant's evidence of third-party liability would not raise "a reasonable inference as to the appellant's own innocence." *Id.,* at 324 (internal citation omitted).

The Supreme Court ruled that the exclusion was unconstitutionally arbitrary because it focused the admissibility analysis on the court's determination of the strength of the state's the forensic evidence rather than the proffered defense evidence. *Id* at 329. ("If the prosecution's case is strong enough, the evidence of third-party guilt is excluded even if that evidence, if viewed independently, would have great probative value and even if it would not pose an undue risk of harassment, prejudice, or confusion of the issues.")

Petitioner was charged with three crimes, aggravated assault, aggravated kidnapping and aggravated robbery. Petitioner argues that the evidence of child pornography was highly probative because it supported his assertion that his associate's assault with a walking stick was unplanned. Thus, Petitioner argues, he could not have lured the victim to the scene with the intent of committing the aggravated crimes. This, he reasons, creates a legal impossibility for him to be guilty of the aggravating factors for his robbery and kidnapping convictions.

Petitioner's analysis is flawed. If the jury had believed that Petitioner had lured the victim to the shed with knowledge that his associate would assault the victim with a dangerous weapon, Petitioner should have been found guilty of the assault. But, as Petitioner repeatedly points out, the jury acquitted him of that charge. Regardless of whether Petitioner anticipated the assault, his behavior afterwards supports the elevation of the kidnapping and robbery to aggravated status. The court of appeals concluded that the exclusion was harmless because

> "the aggravated robbery conviction did not rest on the question of whether Williams had prior knowledge that [his associate] would beat the victim. Instead, the jury needed only to determine that Williams intentionally aided in the robbery once it had been elevated to an aggravated robbery. Thus, we do not agree that the exclusion of the specifics as to what prompted the beating created a sufficiently high likelihood of a different outcome to undermine our confidence in the verdict. "

*Williams,* at ¶21. Regardless of whether Petitioner anticipated the assault, Petitioner and his associates took advantage of the victim's loss of consciousness to tie him to a chair while they divvied up his property. Thus, the evidence at trial showed that Petitioner willingly participated in the crimes once they had been elevated, rendering him legally culpable for the aggravated status. The excluded evidence of child pornography may make Petitioner's claim that the attack was unplanned more plausible, but it does not negate his participation in the crimes for which he was actually convicted.

This context stands in direct contrast to the situation in *Holmes*. There, the excluded evidence, if believed, proved the defendant was innocent. Here, the excluded evidence, even if believed, does not exonerate Petitioner of the crimes for which he was convicted. Thus *Holmes* does not provide clearly established federal law that would support Petitioner's petition for federal habeas relief.

Petitioner fails to present an issue of clearly established federal law sufficient to pass the threshold for federal habeas review. Neither Petitioner, nor this court's independent research has identified clearly established federal law to support the conclusion that a defendant's federal right to present a complete defense is violated by the exclusion of evidence which was not inconsistent with a guilty verdict. Therefore, Petitioner's third ground for relief is denied.

### 3. Petitioner fails to show that the trial court violated his Constitutional rights when it denied his motion for a mistrial after a witness testified that Petitioner had been involved in prior drug sales

The Court styles this issue to reflect the standard of review: Was the Utah Court of Appeals's affirmance on direct appeal of the trial court's factual findings and legal conclusion that Petitioner federal rights were not violated by the denial of Petitioner's motion for a mistrial after a witness testified that he had met Petitioner's through drug sales, "based on an unreasonable determination of the facts in light of the evidence presented" or "contrary to, or

involv[ing] an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States"? *See* 28 U.S.C.S. § 2254(d) (2023).

Petitioner argues that the trial court violated his federal right to a fair trial by denying his

motion for a mistrial after a witness testified that he had met the defendant through drug sales.

Petitioner moved for mistrial after the following exchange between the prosecutor and the

victim:

> Q. So when did you first get to know the defendant?
> A. I had quite a few dealings with [his girlfriend] and then I think he was at a
> pickup I was at one time that I got introduced to him at. I believe that's how I met
> him.
> Q. So prior to January 20th of 2011 how many times did you interact with the
> defendant?
> A. [Petitioner] actually dropped off to me one time at Jubilee Parking lot in West
> Valley and probably maybe three other interactions besides that.
> Q. And are those interactions usually with [his girlfriend] involved?
> A. Yeah, I think Jubilee was the only time I was alone with [Petitioner] when he
> dropped off.

*Williams,* at 1292 ¶22. Petitioner further argues that the surprise evidence violated his rights

under Utah Rule of Evidence 404(b)(2) (requiring reasonable notice when the prosecution

intends to offer evidence of prior bad acts for a proper purpose).

Petitioner raised the issue on direct appeal and the court of appeals

The trial court denied Petitioner's motion for a mistrial. The court reasoned that

> [T]his whole case is about drugs and people who use drugs and
> collecting of debts and forgeries and *et cetera*, to settle drug debts.
> It just seem[s] to me that it's [not] that harmful for the jury to hear
> that the defendant may have been engaged in some other incident
> with the complaining witness where drugs were dropped off or
> picked up. It just doesn't seem to me to be that harmful.

*Williams,* at 1292 ¶22. Petitioner raised the issue on direct appeal and the court of appeals

affirmed. The court of appeals ruled that the testimony had been introduced unintentionally and

for a proper purpose. *Id.* at ¶ 25 ("The State here was not intentionally introducing the evidence

to argue that Petitioner acted like a drug dealer during the events in question, but instead the evidence came in when the State was trying to show prior association between Petitioner and the victim.") The court of appeals further ruled that notice under Utah Rule of Evidence 404(b) was not required because the state did not intentionally elicit the testimony. *Id*. at ¶ 26. Finally, the court of appeals ruled that the testimony was harmless, and thus there was no error in the trial court's denial of Petitioner's motion for a mistrial. *Id.* at ¶ 27.

Again, the threshold question for a federal habeas proceeding is whether Petitioner raises an issue of clearly settled federal law. Whether the failure to provide notice of unanticipated testimony violated Petitioner's rights under the Utah rule 404(b) is outside the scope of federal habeas review. The question before this court is whether the testimony prejudiced the defendant so severely that it violated Petitioner's constitutional right to a fair trial.

Petitioner fails to supply any authority that supports his contention that the challenged testimony violated his federal due process rights. Petitioner points to no clearly established federal law supporting the proposition that evidence of a defendant's prior involvement in criminal activity violates his federal due process rights where the evidence was introduced for the purpose of establishing a prior relationship between the victim and the defendant rather than to show a propensity for committing the charged crime.[7] Thus, the court finds no clearly established federal law supports Petitioner's fourth ground for relief. Ground Four is therefore denied on the merits.

---

[7] The Supreme Court has expressly declined to answer the question of whether a state law which expressly permitted evidence of prior bad acts as propensity evidence would violate a defendant's federal due process rights. *See*, *Estelle,* at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.")

**4. Petitioner fails to show that the sentencing court violated his Constitutional rights by failing to conduct an explicit interests of justice analysis**

Petitioner argues that his federal due process rights were violated when the sentencing court neglected to adhere to state statutes to address his individual circumstances when weighing the interests of justice in setting his sentences and when deciding to run his sentences consecutively. Here too, Petitioner fails to cite any clearly established federal law.

In Petitioner's state habeas proceeding, the Utah Court of Appeals ruled that at the time of Petitioner's sentencing, the interests of justice analysis was understood to be discretionary. (ECF No. 8-4, at 2-3.) Likewise, the Court of Appeals determined that the sentencing court had considered all the statutory factors when deciding to run his sentences consecutively. (*Id.,* at 3.) Finally, the Court of Appeals ruled that Petitioner's counsel had not provided ineffective assistance with regard to either issue. (*Id.*, at 2-3.)

Federal courts will not review state court determinations of state law. *Estelle*, at 67-68. Further, regardless of whether the Utah courts failed to fully comply with state law at sentencing, there is no federal right to an interests of justice analysis at sentencing. *See, Straley v. Utah Bd. of Pardons*, 582 F.3d 1208, 1213 (10th Cir. 2009); *United States v. Horn*, 946 F.2d 738, 746 (10th Cir. 1991) ("We have rejected the notion that a defendant has a due process right to a discretionary, individualized sentence in a noncapital case. ") Nor has Petitioner offered any authority for the proposition that his consecutive sentencing as a parolee offends federal due process rights. *See, Oregon v. Ice, 555 U.S. 160, 171 (2009)* ("a scheme making consecutive sentences the rule, and concurrent sentences the exception, encounters no Sixth Amendment shoal.") Therefore, Petitioner's seventh ground for federal habeas relief fails to raise an issue of clearly settled federal law. Ground Seven is therefore denied.

### 5. Petitioner fails to show that his counsel failed to provide Constitutionally adequate assistance

Petitioner's Ground Eight is comprised of a litany of claims of ineffective assistance of counsel as standalone violations of his federal right to counsel. The list is nearly a verbatim recitation of the claims in Petitioner's PCP. *Compare* ECF No. 29-3, at 10, 14-20, with, ECF. No. 1, at 41-51. The state trial court rejected the state petition on summary judgment detailing its analysis for some, but not all of Petitioner's claims of ineffective assistance of counsel. (ECF No. 8-2.) The Court of Appeals affirmed. (ECF No. 8-4.) The Utah Supreme Court denied certiorari. *Williams v. State,* 429 P.3d 465 (Utah 2018).

Courts apply *Strickland*'s familiar two-pronged standard to claims of ineffective assistance of counsel. A petitioner must show (1) deficient performance by counsel, measured by a standard of "reasonableness under prevailing professional norms;" and, (2) prejudice to the defense caused by that deficient performance. *Strickland,* 466 U.S. at 687-88. The prejudice element requires showing errors were so grave as to rob the petitioner of a fair proceeding, with reliable, just results. *Id.* In the absence of evidence to the contrary, federal courts reviewing a habeas petition may presume that the state courts rejected the claims on the merits. *Harrington,* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.") The question before a federal court reviewing claims of ineffective assistance of counsel in a habeas petition "'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable --a substantially higher threshold.'" *Knowles v. Mirzayance, 556 U.S. 111, 123, (2009) (quoting, Schriro v. Landrigan,* 550 U.S. 465, 473 (2007).)

Recalling that the federal statute tightly curbs review, this Court observes the PCP court applied the correct legal standard to analyze the ineffective-assistance issue. (ECF No. 8-2 at 11 (citing *Strickland,* 466 U.S. at 668).) Likewise, the Utah Court of Appeals' analysis conforms to the *Strickland* standard. The Court of Appeals declined to cite specific authority in its summary affirmance, but the analysis conforms to the *Strickland* factors. *See, e.g.,* ECF No. 8-4, at 3 ("Williams failed to establish that counsel was deficient for not objecting to the court's decision. Furthermore, even assuming that trial counsel's failure to object to consecutive sentences was an error, Williams failed to demonstrate that there was a reasonable probability that the outcome would have been different had trial counsel made the objection.") Thus, the state court decisions to reject each of Petitioner claims for ineffective assistance of counsel are entitled to double deference under *Strickland* and its progeny. As required by the standard of review, the Court now analyzes whether Utah Court of Appeals reasonably applied *Strickland*.

The PCP court and the Utah Court of Appeals reasonably applied the *Strickland* test in rejecting Petitioner's claims of ineffective assistance of counsel. Petitioner's arguments throughout Ground Eight are nearly a verbatim recitation of the arguments he presented to the state trial court. Petitioner neglects to identify any standard for reasonable attorney performance, nor any analysis showing that his counsel failed to meet that standard, nor any analysis showing that the state courts unreasonably applied the *Strickland* test in rejecting his claims.

As an example, Petitioner argues that his appellate counsel provided constitutionally ineffective assistance by failing to request a remand under Utah Rule of Appellate Procedure 23B. Scattered throughout Ground Eight, Petitioner identifies specific issues he proposes could have been developed on remand, including trial counsel's failure to investigate the case and prepare an adequate defense as well as trial counsel's decision to pursue a jury trial rather than a

bench trial. Petitioner offers no authority for the proposition that any of these decisions violate his federal due process rights, nor that the state courts unreasonably applied the *Strickland* test in rejecting his claims.

The state courts reasonably applied the *Strickland* test in rejecting Petitioner's remand claims. The PCP court the court ruled that:

> "[Petitioner] has not established that [Petitioner] or appellate counsel had evidence that should have supplemented the record on appeal. [Petitioner] has not shown that appellate counsel could have properly made a 23B request, and consequently has not established deficient performance. [Petitioner] also fails to show that had the request been filed, the results would have been different."

ECF No. 8-2, at 19. The appellate court affirmed:

> "Williams also failed to establish that appellate counsel had a legitimate basis to move for a rule 23B remand, and that even if appellate counsel had moved for rule 23B remand, it would have resulted in a different outcome. Williams has not persuaded this court that the district court erred by determining that he failed to demonstrate that appellate counsel was ineffective in his direct appeal."

ECF No. 8-4, at 4. Under *Strickland*, the Utah Court of Appeals was correct to analyze how counsel's performance may or may not have been deficient and/or prejudicial, and, finding that it was neither, to reject Petitioner's ineffective-assistance-of-appellate-counsel claims. Petitioner has failed to show that the state courts unreasonably applied *Strickland* in rejecting any of his claims of ineffective assistance of counsel.

This Court is therefore not persuaded that the Utah Court of Appeals unreasonably applied relevant Supreme Court precedent. Petitioner's Ground Eight, containing claims for habeas relief based on ineffective assistance of counsel is denied.

## IV. CONCLUSION

Petitioner's claims are either procedurally defaulted or do not satisfy the federal habeas standard of review.

**IT IS THEREFORE ORDERED** that the petition for writ of habeas corpus is **DENIED** and the action **DISMISSED WITH PREJUDICE**.

**IT IS ALSO ORDERED** that a certificate of appealability is **DENIED**.

This action is **CLOSED**.

DATED this 1st of June, 2023.

BY THE COURT

_____
JUDGE DAVID NUFFER
United States District Court